**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                  No. 97-4189

CHARLES LEON KIRKSEY,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Catherine C. Blake, District Judge.
(CR-96-451)

Argued: December 5, 1997

Decided: March 9, 1998

Before NIEMEYER, Circuit Judge, BUTZNER,
Senior Circuit Judge, and MICHAEL,
Senior United States District Judge for the
Western District of Virginia, sitting by designation.

_____

Affirmed by published opinion. Judge Niemeyer wrote the opinion,
in which Senior Judge Butzner and Senior Judge Michael joined.

_____

**COUNSEL**

**ARGUED:** Denise Charlotte Barrett, Assistant Federal Public
Defender, Baltimore, Maryland, for Appellant. Philip S. Jackson,
Assistant United States Attorney, Baltimore, Maryland, for Appellee.
**ON BRIEF:** James K. Bredar, Federal Public Defender, Baltimore,

Maryland, for Appellant. Lynne A. Battaglia, United States Attorney, Bonnie S. Greenberg, Assistant United States Attorney, Baltimore, Maryland, for Appellee.

_____

**OPINION**

NIEMEYER, Circuit Judge:

We are presented with the question of whether convictions in Maryland state courts for common law assault and battery, defined by Maryland law to be "any unlawful force used against the person of another, no matter how slight," qualify as predicate crimes of violence for purpose of career offender status under the United States Sentencing Guidelines § 4B1.1 (enhancing sentences of career offenders). If such convictions are not categorically crimes of violence, then we must decide what portions of the state record may be consulted to determine whether they are. These issues are questions of law which we review de novo. See United States v. Dickerson, 77 F.3d 774, 775 (4th Cir.), cert. denied, 117 S. Ct. 126 (1996).

I

Following his two-count indictment for two bank robberies in downtown Baltimore, in violation of 18 U.S.C. §§ 2113(a) and (f), Charles Kirksey pled guilty to one of the counts, reserving his right to appeal. Because the district court found that Kirksey had been convicted four previous times in Maryland for crimes of violence, it sentenced him as a career offender under U.S.S.G. § 4B1.1 (requiring two prior crimes of violence) and imposed a 151-month sentence. The court relied on a 1980 conviction for robbery with a deadly weapon, a 1989 conviction for assault, a 1990 conviction for battery, and a 1991 conviction for battery. To find one of the two required crimes of violence, the court categorically used the 1980 conviction for robbery with a deadly weapon. Because the other three convictions were for common law assault or common law battery, crimes requiring only an unconsented touching under Maryland law, the district court determined that the 1989, 1990, and 1991 convictions were not categorically crimes of violence. It therefore concluded that it should

2

review certain documents beyond the state charging documents to determine whether the three crimes were violent:

> I think that when one cannot categorically tell from the elements of the offense, common law elements such as we have here, that it is [a crime of violence, one] should be permitted to look at the charging documents, including statements of probable cause and so forth that are all contained in these initial charging documents which I think we have here.

> And if I am permitted to do that, if I am correct in that determination, I think clearly all three, the '89 and '90 and '91 assault and two battery convictions qualify as crimes of violence and place Mr. Kirksey in the career offender category.

Official state records showed that the 1989 eight-count criminal information charged Kirksey with robbing $40 from Brently Mason by pointing a gun at him. While most of the counts of the information described the violent use of a deadly weapon to rob the victim, the court found Kirksey guilty of one count alleging common law assault, one count alleging a handgun violation, and one count alleging theft under $300, none of which expressly alleged acts of violence. It sentenced Kirksey to seven years' imprisonment for the assault and to lesser, concurrent sentences on the other counts. The assault count, without recounting any facts, charged that Kirksey "unlawfully did make an assault upon, and did then and there beat the aforesaid Complainant; against the peace, government and dignity of the State." As Kirksey argues, the term "beat" as used in the count is the common law verb for a battery. See Lamb v. State, 93 Md. App. 422, 428-29 (Md. Ct. Spec. App. 1992). Thus, the language of this count is conclusory and failed to reveal the fact that the assault actually involved violence. The facts of the assault, which are described in other counts on which Kirksey was not convicted and in court records underlying the criminal information, however, reveal the violent nature of the conduct. The "Application for Statement of Charges/Statement of Probable Cause," signed by the investigating officer under oath before a magistrate, stated that the victim was walking along a street when Kirksey "pulled up to him and displayed a large dark colored revolver. [Kirksey] demanded, `give me your money,' while pointing

3

the gun at him. Mr. Mason being in fear for his life complied with the demand, giving the suspect $40 in U.S. currency." At the time that this "Application for Statement of Charges/Statement for Probable Cause" was signed by the officer, the magistrate issued an "Arrest Warrant on Charging Document" and a handwritten"Statement of Charges," charging Kirksey in the District Court of Maryland for the "primary charge" of robbery with a deadly weapon. That statement of charges, however, was superseded by the criminal information filed in the Circuit Court for Baltimore City, on which Kirksey was tried and convicted.

In connection with the 1990 battery, official state records show that Kirksey was charged with assault and battery by the following language: "Upon the facts contained in the application of Madry, Teresa Michelle, it is formally charged that Kirksey, Charles Leroy . . . did make an assault upon and did batter Teresa Michelle Madry. Against the Peace, Government, and Dignity of the State." The incorporated facts contained in the "Application for Statement of Charges/Statement of Probable Cause" signed under oath by Madry reveal that Kirksey visited Madry, an old acquaintance, and, while at her apartment, stated that he wanted to have sex with her. Kirksey said, "I'm going to do what I have to do to get what I want from you. I['ve] been watching you for over a year now, and I want you." The victim refused, and Kirksey started choking her with his hands, telling her to take her pants off. When the victim escaped and ran to a neighbor, the incident ended. Kirksey was tried on a statement of facts and found guilty, and the judge sentenced him to three years' imprisonment, with 18 months suspended.

Official records revealed with respect to the 1991 conviction that Kirksey was charged on a charging document which alleged: "Upon the facts contained in the application of Mitzel, Paul C., Jr., it is formally charged that Smith, Cedrick [Kirksey]" committed "robbery-general: att," "deadly weapon-conceal," and"battery." Incorporated facts contained in the "Application for Statement of Charges/Statement of Probable Cause," signed under oath by Mitzel, revealed that Kirksey tried to steal $200 from the upper shirt pocket of the victim. When Kirksey grabbed for the bills, the victim said "get away from me, I'm a cop." Kirksey then "kicked the victim several times in the legs." The victim stated that he feared that Kirksey was

4

armed. When Kirksey was apprehended a short time later, he was found with a knife in the open position for which he gave no explanation other than that "he likes to clean his fingernails." The court found Kirksey guilty of common law battery and sentenced him to one year imprisonment.

With respect to all three of these assault and battery convictions, Kirksey took the position before the district court that, under Maryland law, assault and battery are not categorically crimes of violence and the court was not entitled to look behind the charging document to determine whether violence was involved because to do so would violate the categorical approach for reviewing past convictions articulated in Taylor v. United States, 495 U.S. 575 (1990). Even though the district court agreed with Kirksey that the common law offenses were not categorically violent crimes, it determined that his convictions involved crimes of violence because it could properly review the underlying "Applications for Statements of Charges/Statements of Probable Cause." Neither party disputes the fact that these underlying records are official and authentic and reveal that Kirksey committed crimes of violence.

Kirksey now appeals the district court's ruling.

II

Under the mandate of 28 U.S.C. § 994(h) (directing the United States Sentencing Commission to establish imprisonment terms "at or near the maximum" for specified categories of defendants such as career offenders), § 4B1.1 of the Sentencing Guidelines directs that career offenders be sentenced at enhanced offense levels and at criminal history Category VI. A career offender is defined as any defendant who (1) is at least 18 years old, (2) is convicted of a felony that is either a crime of violence or controlled substance offense, and (3) has at least "two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1. A crime of violence is defined to include any federal or state offense punishable by imprisonment for a term exceeding one year that "has as an element the use, attempted use, or threatened use of physical force against the person of another, or . . . involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(1).

5

Application notes explain that in determining whether offenses are crimes of violence, "the conduct of which the defendant was convicted is the focus of inquiry." U.S.S.G. § 4B1.2, comment. (n.2) (Nov. 1995).

To determine whether a prior felony conviction constitutes a crime of violence, a sentencing court must determine as a matter of law whether the elements of the prior offense for which the defendant was convicted involved conduct that presented a serious risk of physical injury to another. Thus, it must use a categorical approach, relying only on (1) the fact of conviction and (2) the definition of the prior offense. See United States v. Wilson, 951 F.2d 586, 588 (4th Cir. 1991); cf. Taylor v. United States, 495 U.S. 575, 600, 602 (1990) (applying same approach to armed career offender status under 18 U.S.C. § 924(e)). Neither Congress nor the Sentencing Commission intended to permit sentencing courts to retry the facts of prior offenses to determine whether the defendant's conduct presents a serious risk of physical injury to others. As the Supreme Court noted in Taylor, "the practical difficulties and potential unfairness of a factual approach are daunting." Id. at 601. Similarly, we have observed that "[t]he factual approach . . . would transform the sentencing hearing into a series of mini-trials . . . [which] would not only be costly, but unreliable." Wilson, 951 F.2d at 590. Accordingly, in determining whether predicate offenses constitute crimes of violence, we have uniformly followed a categorical approach that focuses on the elements of the prior crimes of conviction. See, e.g., United States v. Neal, 27 F.3d 90, 93 (4th Cir. 1994); Wilson, 951 F.2d at 588.

In a limited class of cases, such as the one before us, when the definition of the prior crime of conviction is ambiguous and will not necessarily provide an answer to whether the prior conviction was for a crime of violence, we look beyond the definition of the crime to examine the facts contained in the charging document on which the defendant was convicted. In Taylor, for example, the Court observed,

> This categorical approach, however, may permit the sentencing court to go beyond the mere fact of conviction in a narrow range of cases where a jury was actually required to find all the elements of generic burglary. For example, in a State whose burglary statutes include entry of an automobile

6

as well as a building, if the indictment or information and jury instructions show that the defendant was charged only with a burglary of a building, and that the jury necessarily had to find an entry of a building to convict, then the Government should be allowed to use the conviction for enhancement.

495 U.S. at 602. Likewise, the comments to the Sentencing Guidelines themselves authorize courts to consult the charging document of predicate convictions to examine the conduct expressly charged in the count for which the defendant was previously convicted. See U.S.S.G. § 4B1.2, comment. (n.2) (crime of violence includes offenses where "the conduct set forth (i.e., expressly charged) in the count . . . by its nature, presented a serious potential risk of physical injury to another." (emphasis added)); see also United States v. Cook, 26 F.3d 507, 509 (4th Cir. 1994); United States v. Johnson, 953 F.2d 110, 113 (4th Cir. 1991). It is also consistent with this approach, as noted in Taylor, that we may review jury instructions on the offense of conviction. 495 U.S. at 602; see also Cook, 26 F.3d at 509. This exceptional application of the categorical approach, however, never involves a factual inquiry into the facts previously presented and tried. Consistent with a pure categorical approach, the method of reviewing the charging document requires that we focus only on the facts necessarily decided by the prior conviction. At bottom, the design of the § 4B1.1 sentencing enhancement for career offender status involves punishing recidivists based on the official record of prior convictions and not on any reconsideration of the facts tried in those prior cases.

With these principles in hand, we now examine the approach taken by the district court in this case.

III

At the time of his sentencing, Kirksey had been convicted on three prior occasions for the Maryland common law crimes of assault and battery. Because Maryland recognizes common law crimes, no statute defines their elements. But the Maryland case law fully articulates them. As recognized in Maryland common law, an assault is an attempted battery or an intentional placing of a victim in reasonable apprehension of an imminent battery. See Lamb v. State, 93 Md. App.

7

422, 441 (Md. Ct. Spec. App. 1992). A battery is defined as the "un-lawful beating of another," and includes "any unlawful force used against a person of another, no matter how slight." State v. Duckett, 306 Md. 503, 510 (1986). The common law offense of battery thus embraces a wide range of conduct, including "kissing without consent, touching or tapping, jostling, and throwing water upon another." Epps v. State, 333 Md. 121, 127 (1993). It may include even indirect applications of force such as directing a dog to attack or "exposing a helpless person to the inclemency of the weather." Lamb, 93 Md. App. at 448 (internal quotation marks omitted). In Epps, the defendant was convicted of battery when he intentionally threw a "relatively small amount of water onto the person of another at waist level or below, and with no great force." Epps, 333 Md. at 127. At the other end of the spectrum, a battery includes a fatal shooting or stabbing of a victim.

Thus, under the definition of assault and battery in Maryland, it remains unclear whether we can say categorically that the conduct encompassed in the crime of battery constitutes the use of physical force against the person of another to the degree required to constitute a crime of violence as used in U.S.S.G. § 4B1.2(1)(i). The relevant application note to § 4B1.2 explains that crimes of violence categorically include "aggravated assault," but it does not specifically mention simple assault, although it does later describe conduct qualifying as simple assault. See U.S.S.G. § 4B1.2, comment. (n.2) (Nov. 1995). Moreover, it might be argued that the very term "violent" excludes a minor or slight touching. On the other hand, the language of the Sentencing Guidelines does not qualify the degree of "physical force" that constitutes a crime of violence, and by definition, a common law battery requires some level of applied force. See, e.g., Lamb, 93 Md. App. at 446. Thus, it might just as well be argued that every battery is a crime of violence.

In the case before us, however, no one disputes that the conduct of Kirksey's prior convictions was violent, as that term is used in U.S.S.G. § 4B1.1. The 1989 conviction was based on Kirksey's armed robbery of a pedestrian, during which he stole $40 from the victim; the 1990 conviction was based on Kirksey's choking a woman to compel her to have sex with him; and the 1991 conviction involved Kirksey's effort to steal $200 with the threat of a knife and his kick-

8

ing the victim. Kirksey argues, rather, that this violent conduct is not revealed in any of the charging documents, but only in sworn statements contained in the "Application for Statement of Charges/Statement of Probable Cause" for each charging document. Because these statements themselves are not the charging documents, Kirksey argues, they may not be used under the categorical approach described in Wilson, Johnson, Cook, and Neal. We cannot, however, agree that the complaining witnesses' statements in this case may not, in light of Maryland procedure, be consulted consistent with our precedent.

Under Maryland law, because a statement of charges is a charging document, it must contain "a concise and definite statement of the essential facts of the offense with which the defendant is charged." Md. Rule 4-202. This requirement of facts is in addition to the requirement that the charging document state the time and place of the offense. Id. With these procedural requirements, Maryland discharges its constitutional duty to advise defendants adequately about the nature of the charges against them and with sufficient particularity so that a disposition may be pled to avoid double jeopardy. See United States v. Smith, 44 F.3d 1259, 1264 (4th Cir. 1995).

In at least two of the charging documents involved in Kirksey's prior convictions, the state charges begin with the clause, "Upon the facts contained in the application of [complaining witness], it is formally charged," etc. (Emphasis added). While these charging documents go on to describe the time and place of the battery in each case, they describe no facts other than those incorporated by the first sentence. By incorporating the facts of the complaining witnesses' statements, the charging documents thus comply with Maryland Rule 4-202. Moreover, the facts so incorporated are filed with the charging document, as required by Maryland Rule 4-211. Accordingly, under Maryland procedure, the affidavits of complaining witnesses in these circumstances were not mere testimony providing underlying facts for the issuance of a charging document; they served to supply the facts of the charges as required by Maryland Rule 4-202.

In consulting these incorporated statements, the district court did not make a factual inquiry into the facts of trial. Rather, it followed the methodology of the categorical approach described in Taylor and

9

our precedent, which includes the consultation of the charging document, the jury instructions, and, in this case, the official factual statements incorporated into and filed with the charging documents. The factual charges of Kirksey's convictions thus reveal his use of violence sufficient to qualify his convictions as predicate offenses for career offender status under U.S.S.G. § 4B1.1.

Together with the 1980 armed robbery conviction, the 1989, 1990, and 1991 convictions provide the district court with more than a sufficient basis to sentence Kirksey as a career offender. Accordingly, we affirm the judgment of the district court.

AFFIRMED

10